UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TANESHA M., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:20-cv-00878-TAB-JRS |
| ) | |
| ANDREW M. SAUL Commissioner of Social ) | |
| Security, ) | |
| ) | |
| Defendant. ) | |

**ORDER ON PLAINTIFF'S
BRIEF IN SUPPORT OF APPEAL**

**I.   Introduction**

Plaintiff Tanesha M. appeals the Social Security Administration's denial of her application for disability insurance benefits. Plaintiff argues that the Administrative Law Judge erred in his evaluation of Plaintiff's subjective symptoms and by failing to properly discuss or weigh the opinion of a treating source physician. As explained below, the ALJ's evaluation of Plaintiff's subjective symptoms was not patently wrong. In addition, the ALJ properly considered the medical opinion of Plaintiff's treating rheumatologist and provided good—albeit brief—reasons for giving the opinion only "some" weight. Accordingly, Plaintiff's request for remand [Filing No. 12] is denied.

## II. Background

On October 14, 2016, Plaintiff filed a Title II application for a period of disability and disability insurance benefits. The SSA denied her claim initially and upon consideration. Following a hearing, the ALJ determined that Plaintiff was not disabled.

The ALJ considered Plaintiff's claim for benefits according to 20 C.F.R. § 404.1520(b) and 416.920(a). First, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through December 31, 2018. Subsequently, at step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her amended alleged onset date of September 27, 2016. At step two, the ALJ found that Plaintiff had the following severe impairments: lupus, trochanteric bursitis, bilateral carpal tunnel syndrome, diabetes, and obesity. [Filing No. 9-2, at ECF p. 18.]

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. Before reaching step four, the ALJ found that Plaintiff had the residual functional capacity to perform light work, with the following limitations:

> [Plaintiff] can occasionally lift and carry twenty pounds, frequently lift and carry ten pounds, and push/pull unlimited except for the weights indicated. She can stand or walk for up to six hours in an eight-hour workday, and she can sit for up to six hours in an eight-hour workday. She can occasionally climb ramps or stairs; occasionally climb ladders, ropes, or scaffolds; occasionally balance, stoop kneel, crouch, and crawl. She can perform frequent fingering bilaterally. With the upper left extremity, she can perform frequent handling. With the upper right extremity, she can perform occasional handling. She cannot tolerate exposure [to] extreme vibration, unprotected heights, or hazardous machinery.

[Filing No. 9-2, at ECF p. 21.]

Next at step four, the ALJ determined that Plaintiff was unable to perform any past relevant work. The ALJ noted that Plaintiff, who was 37 years old on the alleged disability onset date, is defined as a younger individual, has at least a high school education, and is able to communicate in English. [Filing No. 9-2, at ECF p. 25.] Finally, at step five, the ALJ found, in considering Plaintiff's age, education, work experience, and RFC, that jobs existed in significant numbers in the national economy that Plaintiff could perform, including: information clerk, usher, telephone solicitor, and surveillance system monitor. [Filing No. 9-2, at ECF p. 26.] The ALJ concluded that Plaintiff was not disabled.

### III. Discussion

Plaintiff argues on appeal that the ALJ committed reversible error by (1) failing to take proper consideration of Plaintiff's subjective symptom assessment and (2) by failing to properly discuss a treating source opinion. The Court reviews the ALJ's decision to determine whether it is supported by substantial evidence. *See, e.g., Biestek v. Berryhill*, __ U.S. __, 139 S. Ct. 1148, 1153 (2019) ("On judicial review, an ALJ's factual findings . . . shall be conclusive if supported by substantial evidence." (Internal quotation marks omitted)). "The court is not to reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the Commissioner. Where substantial evidence supports the ALJ's disability determination, we must affirm the decision even if reasonable minds could differ concerning whether the claimant is disabled." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (internal citations, quotation marks, and brackets omitted).

1. **The ALJ did not err in his evaluation of Plaintiff's subjective symptoms.**

First, Plaintiff contends that the ALJ erroneously applied SSR 16-3p in assessing her subjective symptoms. [Filing No. 12, at ECF p. 14.] The regulations describe a two-step process for evaluating a plaintiff's subjective symptoms. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms, such as pain"; and second, the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]" SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017). "So long as an ALJ gives specific reasons supported by the record, we will not overturn his credibility determination unless it is patently wrong." *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015). *See also Burmester*, 920 F.3d at 510 ("We may disturb the ALJ's credibility finding only if it is patently wrong. Here, the ALJ's determination was not patently wrong because of the many specific reasons the ALJ cited from the record." (Internal citation and quotation marks omitted)).

The ALJ's decision reflects proper application of the two-step process for evaluating Plaintiff's subjective symptoms. The ALJ provided a detailed summary of Plaintiff's recitation of her symptoms, pain, and limitations, daily living activities, and treatment records. [Filing No. 9-2, at ECF p. 22-24.] However, the ALJ concluded that while "[Plaintiff]'s medically determinable impairments could reasonably be expected to cause the alleged symptoms. . . [Plaintiff]'s statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." [Filing No. 9-2, at ECF p. 22.] The ALJ's decision recounts the objective medical evidence and inconsistencies between Plaintiff's statements and

other evidence in reaching the conclusion that Plaintiff's subjective statements on the severity of her symptoms were not entirely consistent with the record evidence.

For instance, in relation to Plaintiff's alleged lupus, the ALJ noted that Plaintiff complained of bilateral knee pain, right elbow pain, and left shoulder discomfort at a visit with her rheumatologist in October 2015. [Filing No. 9-2, at ECF p. 22.] However, at that time her doctor noted no evidence for active lupus disease, and she took and tolerated medication to help with the pain. [Filing No. 9-2, at ECF p. 22.] Similarly, while she complained of knee, hand, and ankle pain in September 2016, x-rays of her hands were negative, and a primary care exam in October 2016 showed normal range of motion and strength, no tenderness or swelling, and normal gait. [Filing No. 9-2, at ECF p. 22.] The ALJ's decision chronologically follows this same analysis for all of Plaintiff's alleged medical issues and symptoms. While Plaintiff vaguely claims that "[b]y failing to even acknowledge serious symptoms the ALJ has skirted her [sic] duties to consider all the evidence[,]" Plaintiff cites no specific symptoms that the ALJ allegedly failed to acknowledge. [Filing No. 12, at ECF p. 18.]

Next, the ALJ commented: "Mindful that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, I examined [Plaintiff's] statements regarding the factors listed in 20 CFR 404.1529(c)(3) and 416.929(c)(3)." [Filing No. 9-2, at ECF p. 24.] In relation to daily activities, the ALJ commented that Plaintiff "described fairly limited activities[,]" but that in portions of the record, she admitted to having more ability than alleged. [Filing No. 9-2, at ECF p. 24.] The ALJ noted:

> [Plaintiff] cares for her daughter, has few problems with personal care, cooks, cleans, shops, drives a car, goes out alone, handles her finances, and regularly attends church. Overall, she is able to function independently and take care of her

5

>    own basic needs.  These daily activities are not as limited as one would expect
>    given [Plaintiff's] complaints of disabling symptoms and limitations.

[Filing No. 9-2, at ECF p. 24.]

Plaintiff argues that the ALJ did not properly consider the qualified manner in which Plaintiff performed activities of daily living. [Filing No. 12, at ECF p. 16.] However, the ALJ emphasized Plaintiff had articulated "fairly limited" activities, but then expressed a belief that, at least at certain points in the record, Plaintiff admitted to more abilities than alleged. [Filing No. 9-2, at ECF p. 24.] The ALJ was not obligated to accept Plaintiff's allegations regarding her symptoms. *See, e.g., Thomas K. v. Saul*, No. 20 C 2367, 2020 WL 6565228, at *6 (N.D. Ind. Nov. 9, 2020) ("[P]laintiff also complains that the ALJ improperly undermined his subjective symptoms.  Actually, the medical record undermined plaintiff's allegations; the ALJ merely relied on that record to dismiss them.  ALJs don't have to believe claimants, of course[.]." (Internal citation and quotation marks omitted)).  Rather, the ALJ properly evaluated those alleged symptoms in the context of the other evidence in the record.  It is not the role of the Court to reweigh the facts or evidence.  *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) ("The court's role is not to reweigh evidence, but to determine whether the ALJ built an accurate and logical bridge between the evidence and the conclusion." (Internal citation and quotation marks omitted)).  As explained above, the ALJ took Plaintiff's daily activities into consideration when evaluating her subjective symptoms, as one of several factors related to Plaintiff's RFC and in assessing Plaintiff's claims in light of the overall evidence.

Next, Plaintiff contends that she has lupus flares three to four times a week, and that while it is reasonable to conclude that she is able to perform more tasks on the days she is not suffering from a flare, "it is not reasonable to assume that she is able to perform these tasks with the necessary frequency of a full time job." [Filing No. 12, at ECF p. 17.]  However, in support

of this argument, Plaintiff cites no medical evidence she claims the ALJ ignored or opinions suggesting she should be further limited beyond the limitations the ALJ assessed in her RFC. Instead, she includes a cite to one decision, *Moore v. Colvin*, 743 F.3d 1118, 1126 (7th Cir. 2014), for the point that full-time work does not allow for flexibility to work around periods of incapacitation. *Moore* is distinguishable from the facts at hand. In *Moore*, the ALJ explicitly found that even if the plaintiff did suffer migraines once or twice a week, she still had significant time during the week during which she would not be incapacitated. *Id*. Here, the ALJ made no such overreaching conclusion regarding allegations of lupus flares. Rather, the ALJ evaluated Plaintiff's allegations of lupus and supporting symptoms and noted her doctor found no evidence for active lupus disease and made other negative or normal findings. [Filing No. 9-2, at ECF p. 22.]

Plaintiff generally argues that "[t]he ALJ's decision is devoid of the necessary and mandated level of articulation required to show that the reasoning forms an accurate and logical bridge between the evidence and the result." [Filing No. 12, at ECF p. 18 (internal quotation marks and citation omitted)]. This conclusory, vague argument is underdeveloped and insufficient to support a finding that the ALJ's evaluation was patently wrong. Furthermore, as already stated, the ALJ reviewed not just Plaintiff's subjective complaints of symptoms and pain, but the entirety of the evidence in the record before reaching the conclusion that Plaintiff could perform light work, subject to various limitations. Even if the ALJ's synopsis of Plaintiff's daily activities or recitation of symptoms was somehow partially lacking, such error was harmless because the ALJ's overall assessment and analysis was supported by substantial evidence. *See, e.g., Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009) ("[W]e believe the ALJ's error did not affect the outcome. And, again, the ALJ need not mention every strand of evidence in her

decision but only enough to build an accurate and logical bridge from evidence to conclusion." (Internal citation and quotation marks omitted)). *Cf. Lothridge v. Saul*, __ F.3d __, __, 2021 WL 37503, at *6 (7th Cir. Jan. 5, 2021) ("An ALJ need not address every piece of evidence, but she may not ignore entire swaths of it that point toward a finding of disability."). Accordingly, the ALJ's assessment of Plaintiff's subjective symptoms was not patently wrong.

### 2. The ALJ provided good reasons for giving the opinion of Plaintiff's treating rheumatologist only some weight.

Second, Plaintiff argues that the ALJ failed to properly consider the opinion of her treating rheumatologist, James Cohen, M.D. [Filing No. 12, at ECF p. 20.] While the ALJ did not address Dr. Cohen by name in his decision, he did reference various visits Plaintiff had with her rheumatologist when assessing her subjective symptoms and included the following summary of Dr. Cohen's opinion in the portion of the decision specifically addressing the opinion evidence in the record:

> In April 2017, [Plaintiff's] rheumatologist wrote a letter indicating she has lupus with episodes of marked fatigue and significant joint pain as well as significant degenerative arthritis of her right elbow. Her doctor noted this made it difficult to lift or pull with her right arm. Her doctor also noted her lupus would flare at times and cause difficult with activities of daily living (Exhibit C10F at 6). This opinion is also given some weight. However, her treatment notes make no mention of fatigue or difficulty with daily activities.

[Filing No. 9-2, at ECF p. 25.] Plaintiff contends that Dr. Cohen's statement, if given proper weight, "would deem [Plaintiff] disabled." [Filing No. 12, at ECF p. 20.] The Commissioner disagrees, maintaining that Dr. Cohen's statement does not go that far, describes no specific limitations, and provides no insight into how often Plaintiff experiences lupus episodes or flares. [Filing No. 17, at ECF p. 16-17.]

In addition, Plaintiff argues that "[t]he ALJ's analysis wholly fails to recognize the special deference that must be attributed to the treating medical source opinions when the ALJ elected

8

not to accord them controlling weight" and contends that this failure means the ALJ did not apply the proper legal standard for evaluating a treating source's opinion. [Filing No. 12, at ECF p. 21.] Thus, Plaintiff claims that a meaningful review of the ALJ's decision is not possible since the ALJ did not properly articulate his reasons for not considering the opinion of Dr. Cohen, a treating source. [Filing No. 12, at ECF p. 22.][1]

With respect to applications for disability insurance filed before March 27, 2017[2], "a treating source's opinion is entitled to controlling weight if it is supported by sound medical evidence and a consistent record." *Reinaas v. Saul*, 953 F.3d 461, 465 (7th Cir. 2020). However, an ALJ may discredit a treating physician's opinion so long as she minimally articulates good reasons for doing so. *See, e.g., Burmester*, 920 F.3d at 512 ("The exclusion of the treating physicians was not unsupported in the ALJ opinion. Instead, the ALJ provided detailed reasons for his finding that the opinions of Dr. Bustos and Dr. Centena were not supported by the record."); *Winsted v. Berryhill*, 923 F.3d 472, 478 (7th Cir. 2019) ("And though treating physician's opinions . . . are usually entitled to controlling weight, an ALJ may discredit the opinion if it is inconsistent with the record." (Internal citation omitted)).

The ALJ did consider Dr. Cohen's opinion. However, the ALJ reasoned that Dr. Cohen's opinion was only entitled to "some" weight because the letter claimed marked fatigue and difficulty with daily living, but her treatment notes made no mention of fatigue or difficulty with

---

[1] Plaintiff confusingly claims at one point that the ALJ did not consider Dr. Cohen's opinion [Filing No. 12, at ECF p. 22], but also acknowledges earlier in the same section that the ALJ stated Dr. Cohen's opinion would be given some weight. [Filing No. 12, at ECF p. 20.]
[2] On January 18, 2017, the SSA published the final rules titled "Revisions to Rules Regarding the Evaluation of Evidence" in the Federal Register, which revised the rules for evaluating opinion evidence. 82 Fed. Reg. 5844. However, these revised final rules became effective on March 27, 2017. Plaintiff's claim was filed on October 14, 2016. [Filing No. 9-2, at ECF p. 16.] Thus, for cases like this one, filed before March 27, 2017, the SSA continues to apply the rules that were in effect at the time of the ALJ's decision. *See* 20 C.F.R. § 416.927; 20 CFR § 404.1527..

9

daily living.  [Filing No. 9-2, at ECF p. 25]  Thus, while the ALJ did not explicitly discuss the regulatory factors outlined in 20 C.F.R. § 416.927(c), he was not required to do so.  Rather, the ALJ adequately reasoned that Dr. Cohen's opinion was only entitled to some weight due to the lack of support in his own treatment notes.

Finally, circling back to Plaintiff's initial argument—that if Dr. Cohen's statement was given proper weight it would deem her disabled—this argument is flawed for many reasons.  First, no obvious reading of Dr. Cohen's statement reaches that conclusion.  Second, even if Dr. Cohen made such a conclusory statement about Plaintiff's ability to work, the ALJ would be free to discount it.  *See, e.g., Loveless v. Colvin*, 810 F.3d 502, 507 (7th Cir. 2016) ("[T]he ALJ did not have to accept Dr. Cusack's October 2012 conclusory statement that Loveless could not work."); *Cooley v. Berryhill*, 738 Fed. App'x 877, 880 (7th Cir. 2018) ("The ALJ properly assessed the three medical opinions.  She appropriately justified discounting Dr. Pethkar's statements about Cooley's sleep issues because they were conclusory and not supported by any clinical basis.  An ALJ may discount a doctor's statements that are not adequately explained if the treatment notes do not clarify the doctor's reasoning.").

Accordingly, the ALJ appropriately considered Dr. Cohen's decision and provided good reasons for only giving it some weight due to inconsistencies with his own treatment records.

## IV.  Conclusion

For the reasons stated above, Plaintiff's request for remand is denied.  [Filing No. 12.]

Date: 1/20/2021

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email